## Leonhard Hoerdt et al. v. Albert Hahne.

1. LANDLORD AND TENANT—*Surrender of Demised Premises—Definition.*—In the law of real property a surrender is the yielding up of an estate for life or for years to him that hath an immediate estate in reversion or remainder wherein the estate for life or years may drown by mutual agreement.

2. SAME—*What Amounts to a Surrender.*—An unconditional agreement between a landlord and a third person, with the assent of the tenant, during the term, to rent the premises to such third person, followed by a change of possession and the payment of rent by the new tenant, will amount to a valid surrender by the tenant of his estate and an acceptance thereof by the landlord.

3. SAME—*Effect of the Receipt of Rent from an Assignee of the Lessee.*—The receipt by the landlord of rent from an assignee of the lessee does not discharge the lessee from his covenant to pay rent according to the covenants of his lease.

4. LESSOR AND LESSEE—*Where the Lessee's Contract Remains in Force Notwithstanding His Assignment.*—The contract of the lessee continues in force notwithstanding he may have parted with his interest in the estate, unless the lessor enters into stipulations with the assignee to accept him as his sole tenant and absolve the original lessee; but if there is no such substitution of the assignee in place of the lessee, and a clear intent to make a new contract with the former and to discharge the latter, both will be liable to the lessor for the rent.

Action of Covenant for Rent.—Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed October 29, 1900.

PRUSSING & McCULLOCH, attorneys for appellants.

A surrender is a "merging," "swallowing up," or "drowning" of the term in the reversion—a yielding up of the leasehold interest to the landlord. Co. Lit., 337 b, 338 a; Beall v. White, 94 U. S. 389; Taylor's Landlord & Tenant, Sec. 507; Wood's Landlord & Tenant, Sec. 484; Woodfall's Landlord & Tenant (1st Am. Ed.), *297.

An assignment of a lease, even with the consent of a landlord, does not release the tenant from his covenant to pay rent. Sexton v. Chicago Storage Co., 129 Ill. 334.

Acceptance of rent by a landlord from the assignee of a tenant does not release the tenant from his covenant to pay rent. Grommes v. St. Paul Trust Co., 147 Ill. 648; Field v. Herrick, 101 Ill. 110; Weil v. Defenbaugh, 65 Ill. App. 489.

When the rent is paid by an occupant who is not the original lessee, the presumption is that he is an assignee of the lessee, and not that there has been a surrender. 1 Wash. on Real Property (5th Ed.), 540; Taylor's Landlord & Tenant, Sec. 512; Whitney v. Meyers, 1 Duer (N. Y. Superior Ct.), 266; Beall v. White, 94 U. S. 382; Leavitt v. Stern, 55 Ill. App. 416; 159 Ill. 526; Bailey v. Wells, 8 Wis. 141; Felker v. Richardson, 67 N. H. 509; Grommes v. St. Paul Trust Co., 147 Ill. 648; Field v. Herrick, 101 Ill. 110; Weil v. Defenbaugh, 65 Ill. App. 489.

A surrender will not be implied against the intent of the parties as manifested by their acts, and when such intention can not be presumed without doing violence to common

sense, the presumption will not be supported. Coe v. Hobby, 72 N. Y. 141.

VOCKE & HEALY, attorneys for appellee, contended that there may be a surrender by an abandonment of the premises by the tenant and an entry into them by the landlord. 2 Wood's Land. & Ten., Sec. 494, pp. 1169–1173.

An agreement, either express or inferable from the conduct of the parties, to release the original lessee and accept a new tenant, may operate as a surrender. Fry v. Partridge, 73 Ill. 51.

An express agreement need not be shown, but the landlord's assent may be implied by operation of law from the manner in which he uses the property after its abandonment by the tenant. The surrender exists in spite of the intention of the parties. It is an inference of law, from the facts, and can not be overcome by showing that the landlord did not intend his acts to operate as an acceptance of the surrender. In other words, a surrender may arise either from the express agreement of the parties, or by operation of law. And whenever a surrender is implied from the acts of the parties, it is a surrender by operation of law. This inference may be drawn from anything which amounts to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume possession of the premises. Wood's Landlord and Tenant, Sec. 497.

Where the tenant abandons the premises and the landlord enters to make repairs, it is such an acceptance as will establish a surrender. MacKellar v. Sigler, 47 How. Pr. (N. Y.) 20.

An actual and continued change of possession by the mutual consent of the landlord and tenant, whether the premises are in the possession of the landlord or a third person, constitutes a surrender. Talbot v. Whipple, 14 Allen (Mass.), 177; Hall v. Burgess, 5 B. & C. 332; Wood v. Partridge, 11 Mass. 493.

An actual and continued change of possession by the mutual consent of the parties will amount to a surrender

by operation of law. Dills v. Stobie, 81 Ill. 202; see also, Williams v. Vanderbilt, 145 Ill. 238; Taylor on Land. & Ten., 514–515.

An oral agreement between a landlord and tenant from year to year, that another tenant shall be substituted in his place, who is accordingly substituted, and thereupon takes possession, is a sufficient surrender to determine the former tenancy. Stone v. Whiting, 2 Stark. 235; Nickells v. Atherstone, 10 Q. B. 944; Walker v. Richardson, 2 M. & W. 882; Laurence v. Faux, 2 F. & F. 435; Hobson v. Cowley, 26 L. J. Exch. 209.

Where by statute there can only be a surrender by deed or writing, yet there may be a surrender by operation of law, although the writing itself is insufficient. McGlynn v. Brock, 111 Mass. 219.

Mr. Justice Adams delivered the opinion of the court.

Leonard Hoerdt and Christian August Woerner, the appellants, sued Albert Hahne, the appellee, for rent alleged to be due from appellee by the terms of a lease of certain premises therein mentioned, the term being from May 24, 1893, till May 23, 1900. The rent reserved is $16,800, payable in installments of $200 per month, in advance. The amount claimed in the suit is $400, for the two months ending September 24, 1899. The lease was executed to appellee by F. Hoerdt, and appellants sued as owners of the reversion. It was conceded on the trial by the defendant that the evidence for the plaintiffs made a *prima facie* case for them, entitling them to judgment for the sum of $400. The jury found for the defendant, and the court overruled a motion for a new trial, and gave judgment on the verdict. The defendant filed the following plea and relies solely on the proof offered in support of it as a defense to the action:

" And for a further plea in this behalf the defendant says that the plaintiffs ought not to have their aforesaid action against him, the defendant, because he says that after the making of the said indenture of leasing in the said declaration mentioned, and after the said plaintiffs had become possessed and seized of the said demised tenements, with the

appurtenances, as aforesaid, and during the continuance of the said term by said indenture of leasing granted, to wit, on or about the 23d day of September, 1898, at Chicago, in the county of Cook, aforesaid, this defendant did surrender and yield the said demised premises with the appurtenances thereto to the said plaintiffs, and the said term of years of him, the said defendant, then to come and unexpired, of and in the said demised tenements with the appurtenances, and all his estate, right, title and interest of and in the same, and which said surrender they, the said plaintiffs, then and there accepted, and that they, the said plaintiffs, have ever since said surrender and acceptance continued in the possession and control of the said demised tenements, with the appurtenances as aforesaid. And of this the defendant puts himself upon the country," etc.

The question to be decided is, whether the evidence shows a surrender of the demised premises and term, as alleged in the plea. Albert Hahne, the appellee, testified that the premises are situated at the northeast corner of Belmont and Western avenues; that there is a saloon at the corner, and a fruit store and a bicycle shop in connection with it, all in the same building; that there were three store fronts on the premises when he vacated; also, that there is a grove on the premises; that he took possession in the spring of 1893 and left the premises in the fall of 1898; that he sold out in September, 1898.

Hahne was examined by his attorney and answered as follows:

Q. "Now, to whom did you surrender possession of the premises?" A. "Mr Witte."

Q. "What is his first name?" A. "August C. Witte."

Q. "He is here in court, is he?" A. "Yes, sir."

Q. "At or about the time of the surrender of the premises by you to Witte, did you have any conversation with Hoerdt or Woerner?" A. "Hoerdt was there on several occasions, and I told him I had a customer, and if he would consent to a transfer of the lease, and he said that would not be necessary, all he wanted was the rent from that party."

Q. "When did that conversation occur?" A. "Some time in the fore part of September."

Q. "Was that before you sold out your premises to Witte?" A. "No, sir."

Q. "Did you have any conversation with Hoerdt about that time?" A. "No, sir."

Hahne further testified that after he sold out to Witte he stayed on the premises thirty days, attending to business for Witte; that after he left the premises, the tenants of the fruit store and bicycle shop, to whom he had sublet, moved out and the partitions were taken down, and the place turned into a hall; that this was not done at his request, nor was he consulted about it, that Witte paid the rent of the premises after the witness moved out. The witness stated that he had no conversation with Hoerdt about the transfer of the lease, other than that above mentioned.

Appellee put in evidence a receipt, as follows:

"Chicago, November 1, 1898.
Received of Mr. Witte, two hundred 00-100 dollars for rent from 24th of Septbr. to 24 of October.
Ch. August Woerner."

Hahne also testified that after he left the premises no demand was made on him for rent till the fall of 1899.

August C. Witte testified that he went into possession of the premises September 19, 1898; that he had no conversation with Hoerdt or Woerner before he took possession, or about the transfer of the lease, at any time; that about the middle of October he spoke to Woerner about changing the stores into a hall, and the latter said the stores ought to be taken out; that Hoerdt had a big business in the hall, and the premises ought to be in a hall again. This witness further testified that he expended $1,500 in changing and repairing the premises, of which amount appellants allowed him $350; also that appellants said, that if they had had the right tenant there they would have made the changes long ago.

Pfeiffer, the carpenter who made the changes in the premises, testified that Woerner and Witte suggested the changes, that the former superintended some of the work, and told the witness to fix it up in good shape, and Woerner said that if Hahne had not been so slow in business he would have done that before.

George Blissing testified that he heard Woerner tell Witte that he would allow the latter $350 on monthly payments of rent toward the proposed changes.

The foregoing is substantially all the evidence on which appellee can rely in support of his plea of surrender.

Appellant Woerner testified in rebuttal that Hahne asked him to consent to an assignment of the lease to Witte, and that he told Hahne that it was unnecessary, that he, Hahne, was good enough for him, and that he didn't know the man at all, and that he could not give a lease to a man he didn't know. This witness further testified that he didn't know Witte until three or four weeks after he went into possession of the premises. Coke defines a surrender thus:

" *Sursum redditio* properly is the yielding up of an estate for life or yeares to him that hath an immediate estate in reversion or remainder, wherein the estate for life or yeares may drowne by mutuall agreement betweene them." Coke upon Littleton, Vol. 2, Sec. 636.

This definition has been substantially adhered to by text writers and the courts. Greenleaf's Cruise's Dig., Vol. 4, C. 7, Sec. 1; 2 Taylor's Landlord and Tenant, Sec. 507; Wood's Landlord and Tenant, Sec. 487; 1 Woodfall's Landlord and Tenant, Sec. 297; Beall v. White, 94 U. S. 382, 389.

A surrender must be by mutual agreement of the parties, as stated in the foregoing definition. It is not and can not be contended in the present case that there was an express agreement for a surrender of the premises. Appellee did not even propose to appellants, or either of them, a surrender of his interest. He merely testified that, after he had sold his interest to Witte, and while the latter was in possession, he asked Hoerdt to consent to an assignment of the lease to Witte. Hoerdt declined to give his consent to the assignment, and it does not appear from the record that there ever has been an actual assignment of the lease. Appellee did not testify that he surrendered to appellants, to whom only he could legally surrender, they being the owners of the reversion. He testified that he surrendered to Witte. But it is claimed by appellee's counsel that a sur-

render may reasonably be implied from the facts in evidence. They rely on the receipt of the rent by appellants from Witte. This is entirely consistent with the continuing liability of appellants. The receipt by the landlord of rent from an assignee does not, in any way, operate to discharge the lessee from his covenant to pay rent. Grommes v. St. Paul Trust Co., 147 Ill. 634, 648–9; Field v. Herrick, 101 Ill. 110.

In the former case the court say:

"In case the rent is not paid by the assignee as it becomes due, an action may be sustained against the lessee therefor, and it makes no difference in this respect that the lessor may have received rent from the assignee and accepted him as tenant of the premises. (Shaw v. Patridge, 17 Vt. 626; 12 Am. & Eng. Ency. of Law, page 739.) Where there is an express covenant to pay rent for a term of years, the mere acceptance of rent by the lessor from the assignee of the lease does not discharge the lessee. (Harris v. Heackman, 62 Ia. 411.) The contract of the latter continues in force, notwithstanding he may have parted with his interest in the estate, unless the lessor enters into such stipulations with the assignee as to accept him as sole tenant and absolve the original lessee. If there be not a substitution of the assignee in place of the original lessee, and a clear intent to make a new contract with the former, and to discharge the latter from further liability under the lease, both will be held liable to the lessor."

The case of Grommes v. St. Paul Trust Co. was similar to the present in this, that the lessee sold his place to a third party, who took possession and paid the rent for some time. It is contended by appellee's counsel that the actual and continued change of possession from Hahne to Witte, by consent of the parties, operated as a surrender. If this proposition be true, then it follows that if a lease be assigned to the lessee with the lessor's consent, and the lessee vacates the demised premises and puts the assignee in possession, and the latter continues in possession, the lessee will be discharged from his covenants to pay rent. Such is not the law.

Dills v. Stobie, 81 Ill. 202, and Williams v. Vanderbilt,

145 Ill. 238, have no application to the facts in the case at bar.

In the former case there was a new lease on different terms substituted by the parties for the first or original lease, and all the authorities hold that this constitutes a surrender by operation of law. 2 Taylor's Landlord and Tenant, Sec. 507; Greenleaf's Cruise's Dig., Vol. 6, Title 39, Sec. 5.

In the case of Williams v. Vanderbilt, the contested question was whether the landlord had waived his right of forfeiture for non-payment of rent.

Appellee's counsel omit from their proposition an essential element, namely, an agreement between the parties for a change of the tenancy.

Taylor says:

"But an unconditional agreement between a landlord and a third person, with the assent of the tenant, during the term, to rent the premises to such third person, followed by a change of possession and the payment of rent by the new tenant, will amount to a valid surrender of the old lease, and an acceptance thereof on the part of the landlord." 2 Taylor's Landlord and Tenant, Sec. 509.

In Grommes v. St. Paul Trust Co., *supra*, the same doctrine is substantially announced, the court saying:

"The landlord must create a new tenancy by agreeing to accept the sub-tenant, or assignee of the lease, as his tenant, and by accepting such sub-tenant or assignee in substitution for the original lessee before the latter will be discharged."

It is clear that there was no agreement between the appellants, or either of them, with Witte, to accept him as their tenant in place of appellee; no agreement for a new tenancy. Witte testified, as heretofore stated, that he had no conversation with either of the appellants prior to his taking possession, and no conversation at all with either of them in reference to the lease, and the only conversation with either of the appellants, testified to by appellee, was in reference to the assignment of the lease, to which appellants declined to assent. Suppose Witte, after occupying the premises for a few months, had vacated them, and

appellants had sued him for subsequently accruing rent on an alleged new agreement with him; can it be contended that they could have recovered, both they and Witte testifying that there never had been any conversation between them about the lease, but that they, the plaintiffs, merely received rent from him on the terms of the lease to appellant?

Counsel for appellee also rely on the fact that appellants permitted Witte to take down the partitions of the building and transform the rooms into a large hall, and make other repairs, at a cost of $1,500, of which amount they allowed Witte $350 on the monthly installments of rent. We are at a loss to perceive the force of this evidence, if any, on the question of surrender of the premises. The appellee had sold out to Witte his entire interest in the premises, and, as between him and Witte, he had no longer any interest. He could not, as between him and his vendee, re-enter. Appellants presumably knew of the sale, and so long as Witte, appellee's vendee, paid the rent, they seem to have consented to his occupancy of the premises, and were willing that he should make the changes and improvements which he made. This was not inconsistent with the intention to hold appellee liable on his covenant to pay rent. We hold, as matter of law, that an agreement for a surrender of the lease and the creation of a new tenancy, by the substitution of Witte for appellee, as appellants' tenant, can not reasonably be inferred from the evidence for appellee, and that the court would have been warranted in directing a verdict for appellants.

See Whitney v. Meyers, 1 Duer, 266, a case very similar to the present.

The lease sued on is under seal, and, as said by the court in Grommes v. St. Paul Trust Co., *supra*, there must be a clear intent to make a new contract before the lessee can be held discharged from liability.

The judgment will be reversed, and the cause remanded for further proceedings in accordance with this opinion. Reversed and remanded.