## Sherrard State Bank for use of Edward Moberg, Receiver, Appellant, v. J. L. Vernon et al., Appellees.

## Gen. No. 7,635.

1. CORPORATIONS—*who bound by acts of stockholders' meeting.* Proceedings of stockholders' meeting, no matter where held or how defectively members are notified, bind all who appear and take part without dissent.

2. CORPORATIONS—*waiver of notice of stockholders' meeting.* Statutory and other requirements for notice of meetings of stockholders may be waived by their presence and participation in the meeting.

3. CORPORATIONS—*when plea of ultra vires available in collateral proceeding.* Plea of ultra vires may be successfully interposed in a collateral proceeding where the corporation is alleged to have performed an act which it was not authorized to perform.

4. CORPORATIONS—*when plea of ultra vires may not be interposed.* Plea of ultra vires cannot be successfully interposed, except by the State, to the mere abuse of a general power which the corporation has.

5. BANKING—*methods of winding up affairs of failing banks.* Failing banks may wind up their affairs in other ways than by the action of the auditor of public accounts in appointing a receiver, as by entering into a contract to have another bank assume its liabilities and take its assets.

6. CORPORATIONS—*common-law rule on sale of corporate property.* At common law neither directors nor majority of stockholders had the power to sell all the property of a prosperous corporation against dissent of a single stockholder,

7. CORPORATIONS—*power to sell property of failing corporation.* Where the corporation is insolvent or in failing circumstances and the business can no longer be carried on profitably and advantageously, a sale of the corporate property may be made and minor stockholders, in the absence of fraud, cannot object.

8. BANKING—*liability of failing bank's officers on their personal contract to make good assets of their bank to bank taking over its affairs.* Written personal contract of a failing bank's officers to make good any losses on assets their bank turned over to another bank for the latter's assumption of liabilities of their bank, is an original undertaking, making them liable under its terms.

Appeal by plaintiff from the Circuit Court of Mercer county; the Hon. WILLIAM T. CHURCH, Judge, presiding. Heard in this court at the April term, 1926. Reversed and remanded with directions. Opinion filed October 8, 1926. Rehearing denied and opinion slightly modified January 20, 1927.

WATSON & DUVALL, for appellant.

CHURCH & MANNON and HENRY WATERMAN, for E. E. Sincox and Thomas Convill, appellees.

MR. JUSTICE JONES delivered the opinion of the court.

This is an action of assumpsit brought by Sherrard State Bank for the use of Edward Moberg, receiver, against appellees, J. L. Vernon, H. E. Sudlow, E. E. Sincox and Thomas Convill. The action is based upon a written guaranty executed by appellees and by Charles Kinsey, who was dead at the time the suit was commenced. His personal representative was not made a party to the action. No service was had on Sudlow. A general and special demurrer to the amended declaration was filed by Sincox and Convill, and a similar demurrer was interposed by Vernon. The demurrers were sustained and appellant elected to stand by its declaration. Judgment was entered and this appeal followed.

The sole question in this case is as to the sufficiency of the declaration. Its substantial allegations are: On September 5, 1923, the Sherrard State Banking Company, a corporation, was in failing circumstances, unable longer to carry on a banking business, and on said day sold to the Sherrard State Bank a part of its assets, including its furniture and fixtures, as listed in the agreement set out in the declaration. As a part of said contract, the Sherrard State Bank assumed the liability of the Sherrard State Banking Company to the amount of $201,379.75, and in consideration of the assumption of such liabilities, J. L. Vernon, H. E. Sudlow, E. E. Sincox, Thomas Convill and Charles Kinsey, who were all directors of the Sherrard State Banking Company, and who jointly owned more than two-thirds of its capital stock, personally and individually guaranteed the payment of the notes or extensions thereof in any form which were on said day assigned by the Sherrard State Banking Company to the Sherrard State Bank, as listed in "Schedule B" in said contract and guaranty. The contract with its schedules and exhibits and said guaranty are set out *in haec verba,* together with the resolutions of the directors of each of the banks, authorizing the execution of the contract. The seven exhibits attached to the contract showed the liabilities assumed, and the schedules showed the assets transferred under the contract. "Schedule B" listed borrower's notes aggregating $90,836.26. The contract also provided that the Sherrard State Banking Company should deposit to its own credit in the Sherrard State Bank, in a savings account at 4 per cent interest, all money which the Sherrard State Banking Company should receive from assets not assigned to the Sherrard State Bank and the latter bank was authorized and empowered to charge against said account any notes listed in "Schedule B" which became due and unpaid, as said bank should deem proper. The contract provided that

in consideration of the Sherrard State Bank's assuming liabilities to the Sherrard State Banking Company to the amount of $201,379.75, the directors of the Sherrard State Banking Company who signed it, personally and individually guarantee the payment of the notes or extensions or renewals thereof in any form listed in ''Schedule B'' to the amount of $90,836.26. On the same day the Sherrard State Banking Company, by a duly constituted meeting of the stockholders, ratified the action of the said board of directors in entering into the contract with the Sherrard State Bank, and the contract was presented to the stockholders of the Banking Company for ratification. At the stockholders' meeting, J. L. Vernon, H. E. Sudlow, E. E. Sincox, Charles Kinsey and Thomas Convill were present. They owned 198 shares of stock. T. A. Vernon and Annie Sincox were represented by proxy and owned 20 shares of stock. A resolution ratifying the contract was adopted by receiving 218 votes and there were no votes against it. The total number of shares in the corporation was 250. Charles Kinsey died in January, 1924. On October 2, 1924, the Sherrard State Bank was closed under the direction of the auditor of public accounts, and Edward Moberg was appointed receiver. The obligations mentioned in said ''Schedule B,'' except three notes, aggregating $3,065, are overdue and unpaid. Appellees insist that the declaration alleges conclusions and not facts as to a meeting of the stockholders; that the declaration shows no assent of the stockholders to the terms of the contract; that the contract entered into was beyond the power of either bank to make, and was therefore ultra vires; that the affairs of banks are controlled by statute and that the only manner in which a bank in failing circumstances can dispose of its assets or be wound up is by action of the auditor of public accounts, and that because the contract is ultra vires,

the guarantors are not estopped to deny liability thereunder.

Appellees contend that the averment that a "duly constituted" stockholders' meeting was held is merely a legal conclusion, and that facts must be shown which will constitute a call for the meeting in accordance with the statute governing state banks. Regardless of whether the averment is sufficient to show a duly constituted meeting or not, it charges that there was a meeting of the stockholders and that appellees were present in person and that their stock was voted for the ratification of the act of the directors. It is settled beyond question that no matter where a stockholders' meeting is held or how defectively the members are notified, the proceedings will bind all who appear at the meeting and participate in it without dissent. *People v. Matthiessen,* 193 Ill. App. 328, aff'd 269 Ill. 499; *J. W. Butler Paper Co. v. Cleveland,* 121 Ill. App. 491, aff'd 220 Ill. 128; *Hiles v. C. A. Hiles & Co.,* 120 Ill. App. 617. In other words, statutory and other requirements for notice of meetings of stockholders may be waived by their presence and participation in the meeting. Appellees are in no position to deny that the meeting was duly constituted.

They further claim that the transaction was in fact a sale of all the assets of the Sherrard State Banking Company in an attempt to wind up its affairs and that therefore the contract was null and void, and that the only way the affairs of a bank can be wound up is by the method prescribed by statute for the consolidation of banks or by dissolution under supervision of the auditor of public accounts. In this connection it is urged that while the declaration alleges the sale of a part of the assets of the Sherrard State Banking Company it appears from the agreement attached thereto that all of the bank's assets were sold. But there is in the contract an express agreement that the Sherrard State Banking Company shall deposit with the

Sherrard State Bank all moneys which the Sherrard State Banking Company shall receive from any assets not thereby transferred to the other bank, and the other bank was empowered to charge against that account any of the due and unpaid notes guaranteed by appellees. It was manifestly not the object of the parties to dissolve the Sherrard State Banking Company for some time, at least. A course of conduct was followed in this case which is not uncommon, where a bank is in a failing or perilous condition, and another bank or group of banks in an effort to save it or prevent a "run" takes over a large portion of its assets, in consideration of a guarantee to pay off its liabilities.

There is a difference in corporate acts which are an abuse or an excessive use of powers granted, and those which are void as being outside the object of its creation and beyond the powers conferred. The cases cited by appellees, where ultra vires acts of a corporation were successfully attacked, relate to acts expressly prohibited or without the object of the corporation's creation and beyond its powers—acts which were void. While it is true that the plea of ultra vires may be successfully interposed in a collateral proceeding where the corporation is alleged to have performed an act which it was not authorized to perform, it is well settled that where the act is a mere abuse or an excessive or improper exercise of a general power, which the corporation has, such a plea cannot be successfully interposed. In such a case the question of ultra vires can only be raised by the State. *Rector v. Hartford Deposit Co.*, 190 Ill. 380; *Western Tel. Mfg. Co. v. Foley*, 150 Ill. App. 343; *Daniels v. Belvidere Cemetery Ass'n*, 96 Ill. App. 387; *Dearborn Truck Co. v. Staver Motor Car Co.*, 219 Ill. App. 295; *McIlvaine v. Foreman*, 292 Ill. 224; *Chicago Gen. Ry. Co. v. Chicago City Ry. Co.*, 186 Ill. 219; *American Credit & Trust Co. v. Worthington*, 191 Ill. App.

177; *The Commercial Co. v. Sturges,* 186 Ill. App. 573; *Illinois Life Ins. Co. v. Beifeld,* 184 Ill. App. 582. It is not the law that the only way a failing bank can wind up its affairs is by action of the auditor of public accounts in the appointment of a receiver. And it is not beyond the power of the banks to enter into the contract in question. A purchasing or absorbing bank would hardly assume the liabilities of another bank without receiving a guaranty such as was entered into in this case to indemnify it against loss.

At common law neither the directors nor a majority of the stockholders had power to sell all the property of a growing, prosperous corporation, able to achieve the objects of its creation, as against the dissent of a single stockholder. Where, however, the corporation is insolvent or in failing circumstances and the business can no longer be carried on profitably and advantageously, such a sale may be made and minor stockholders cannot object thereto in the absence of fraud. *Beardstown Pearl Button Co. v. Oswald,* 130 Ill. App. 290; *Rothermel v. Bell & Zoller Coal Co.,* 79 Ill. App. 667; 14 C. J. Corporations, § 1323. Sound reasoning dictates that the directors of a bank in failing circumstances should have the right to enter into such a contract as the one here involved, not only as a matter of law but as a matter of public policy. Regardless of all other questions in this case it appears that appellees' guaranty was an original undertaking by which they became liable according to its terms. *Gridley v. Capen,* 72 Ill. 11; *Gage v. Mechanics' Nat. Bank,* 79 Ill. 62. We think the declaration stated a good cause of action. The demurrer thereto was improperly sustained, and the judgment of the circuit court will be reversed and the cause remanded with directions to overrule the demurrer.

*Reversed and remanded with directions.*